UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEITH CRONIN, *on behalf of himself and all others similarly situated*,

    Plaintiff,

v.

CASE NO.: 8:15-cv-0768-EAK-EAJ

PORTFOLIO RECOVERY ASSOCIATES, LLC, *a foreign limited liability company*,

    Defendant.

_____/

## ORDER ON DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, LLC'S MOTION TO STAY PROCEEDINGS, COMPEL ARBITRATION, AND DISMISS CLASS ACTION CLAIMS

THIS CAUSE is before the Court on Defendant's Motion to Compel Arbitration, Stay the Proceedings, and Dismiss Class Action Claims ("Motion") (Doc. 8) and Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration, Stay the Proceedings, and Dismiss Class Action Claims ("Response") (Doc. 13). After reviewing Defendant's Motion, Plaintiff's Response, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court hereby **DENIES** Defendant's Motion for the reasons stated below.

## PROCEDURAL HISTORY

Plaintiff, Keith Cronin, filed his Class Action Complaint against Defendant, Portfolio Recovery Associates, LLC ("PRA"), on April 1, 2015, in the United States District Court, Middle District of Florida, Tampa Division (Doc. 1). PRA timely filed its Motion on May 13, 2015 (Doc. 8). Plaintiff filed his Response on June 17, 2015 (Doc. 13). The following facts are

1

set out only for purposes of resolving the Motion before the Court based on the filings of the parties and the complaint.

## STATEMENT OF THE FACTS

Plaintiff opened a Lowe's credit card account through GE Capital Retail Bank ("GE").[1] The account was governed by a Credit Card Account Agreement ("Agreement"). The Agreement was to become valid and enforceable upon Plaintiff's "opening or using [his] account" (Doc. 8). Plaintiff admits to using the card and that in doing so he incurred debt.

Importantly, the Agreement contained an assignment provision, which permitted GE to "sell, assign, or transfer, any or all rights or duties under [the] Agreement or [Plaintiff's] account" (Doc. 8). PRA, through affidavit submitted by its Custodian of Records, David Sage ("Sage"), asserts that on March 19, 2014, GE assigned all interest in Plaintiff's account and GE's rights under the Agreement to PRA. Plaintiff alleges that on or around April 2, 2014, PRA then began attempts to collect on the debt in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA") (Doc. 1).

PRA now moves to stay the proceedings, compel arbitration, and dismiss Plaintiff's class action. PRA, as the purported assignee, relies on two provisions contained within the Agreement to support its Motion: (1) an arbitration provision, requiring Plaintiff and GE to "arbitrate any dispute or claim…if it relates to [Plaintiff's] account" (Doc. 8); and, (2) a waiver of class action rights contained within the arbitration provision, requiring Plaintiff "not to participate in a class…action against [GE]" (Doc. 8). As per the terms of the Agreement, the arbitration provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*

---

[1] GE changed its name to Synchrony Bank on June 2, 2014 (Doc. 8).

Plaintiff opposes PRA's motion on several grounds. First, Plaintiff contends that PRA has failed to demonstrate that a valid agreement to arbitrate was ever formed between Plaintiff and GE because Plaintiff did not sign the Agreement, PRA has not established that Plaintiff ever received or negotiated the Agreement or received notice of the arbitration provision, and the affidavit submitted by Sage is deficient (Doc. 13). Alternatively, Plaintiff contends that even if an agreement to arbitrate existed between Plaintiff and GE, the provision in unenforceable as to PRA because PRA has not demonstrated that it owns Plaintiff's account and, therefore, is not a party to the Agreement (Doc. 13). Plaintiff also contests the enforceability of the arbitration provision on grounds that Plaintiff's FDCPA claims fall outside of the scope of the provision because the claims do not "relate to" terms and conditions of the Agreement or Plaintiff's account (Doc. 13). Furthermore, Plaintiff claims that because the arbitration provision either does not exist or is unenforceable, PRA cannot enforce the class action waiver (Doc. 13).

## DISCUSSION

I.   **Legal Standard**

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity." 9 U.S.C. § 2. And while there is a "liberal federal policy favoring arbitration agreements," *Wiand v. Schneiderman*, 778 F.3d 917, 922 (11th Cir. 2015) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)), "the FAA's strong pro-arbitration policy only applies to disputes that the parties have agreed to arbitrate," *Becker v. Davis*, 491 F.3d 1292, 1298 (11th Cir. 2007) *abrogated on other grounds by Arthur Anderson LLP v. Carlisle*, 556 U.S. 624 (2009) (quoting *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004)). "In other words, arbitration of a dispute should only be ordered where 'the court is satisfied that neither

the formation of the parties' arbitration agreement *nor* . . . its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, the court must resolve the disagreement." *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 990 (11th Cir. 2012) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010)) (*emphasis in original*). Consequently, in ruling on a motion to stay the proceedings and compel arbitration, a district court must undertake a two-step inquiry. *Klay,* 389 F.3d at 1200. The first step requires the court to determine "whether the parties agreed to arbitrate the dispute." *Id*. If so, the second step requires the court to determine "whether legal constraints external to the agreement foreclose the arbitration of those claims." *Id.*[2]

As is explained below in detail, this Court finds that an agreement to arbitrate disputes related to Plaintiff's account existed between Plaintiff and GE. But, because PRA has not established that it has been assigned Plaintiff's account or GE's rights under the Agreement, PRA's Motion must be denied.

**II.   Analysis**

It is well established under Florida law that "an unqualified assignment transfers to the assignee all the interests and rights of the assignor in and to the thing assigned." *State v. Family Bank of Hallandale,* 667 So.2d 257, 259 (Fla. 1st DCA 1995); *see also Lawyers Title Ins. Co., Inc. v. Novastar Mortgage, Inc.,* 862 So.2d 793, 798 (Fla. 4th DCA 2003); *Dove v. McCormick,* 698 So.2d 585, 589 (Fla. 5th DCA 1997). In other words, "the general rule is that [a]n assignee stands in the shoes of his assignor." *Dep't of Revenue v. Bank of Am., N.A.*, 752 So. 2d 637, 642 (Fla. 1st DCA 2000) (citations and internal quotations omitted). Thus, here, if a valid Agreement between GE and Plaintiff existed, per the assignment provision GE would have been free to

---

[2] Because the Court finds that PRA has not shown that an agreement to arbitrate claims related to Plaintiff's account exists between itself and Plaintiff, the Court will not address the second step of the analysis.

assign all interest in Plaintiff's account as well as GE's rights under the Agreement to PRA. In such a case, PRA, now standing in the shoes of GE, would be permitted to enforce its rights under the Agreement accordingly, including the right to arbitrate disputes related to Plaintiff's account. But, as *Klay* instructs, a prerequisite to this Court recognizing an assignment by GE to PRA would be establishing that an agreement to arbitrate such disputes existed between GE and Plaintiff in the first place. 389 F.3d at 1200. The Court finds that it did. The Agreement between Plaintiff and GE notwithstanding, however, because PRA has not sufficiently established that it received an assignment of Plaintiff's account and GE's rights under the Agreement, PRA's Motion must be denied.

### A. An Agreement to Arbitrate Disputes Related to Plaintiff's Account Existed Between Plaintiff and GE.

As a threshold matter, Plaintiff contests the existence of an Agreement between Plaintiff and GE to arbitrate disputes relating to Plaintiff's account (Doc. 13). This Court finds, however, that a valid agreement to arbitrate did exist between Plaintiff and GE.

In support of his position that no such Agreement existed, Plaintiff claims that there is no proof that he ever signed the Agreement (Doc. 13). This argument is without merit. While its true that the copy of the original Agreement between Plaintiff and GE, which was provided to the Court by Sage along with his affidavit, was not signed by Plaintiff, the FAA does not require arbitration agreements to be signed by the parties. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).

Plaintiff also contests the existence of the Agreement between Plaintiff and GE on grounds that PRA has not established that Plaintiff ever received or negotiated the Agreement or received notice of the Agreement's arbitration provision (Doc. 13). Certainly, it would defy logic to think that there exists no agreement which operates to govern the relationship between

5

Plaintiff and GE, insofar as it relates to Plaintiff's Lowe's credit card account. To that end, PRA asserts that the agreement governing the relationship between Plaintiff and GE is the Agreement that was requested from GE by Sage and attached to Sage's affidavit (Doc. 8). Plaintiff argues, however, that Sage's affidavit is deficient in several respects (Doc. 13). This Court disagrees.

Because Plaintiff is the party seeking to avoid arbitration, he must unequivocally deny that an agreement to arbitrate exists between the parties, and the burden is on Plaintiff to submit evidence to substantiate such a denial. *Wheat, First Sec., Inc. v. Green,* 993 F.2d 814, 817 (11th Cir.1993) (internal citations omitted). Although Plaintiff clearly denies that an agreement between himself and GE to arbitrate disputes related to his account exists, he has proffered no evidence to substantiate his denial. Indeed, Plaintiff has not provided this Court with evidence that he, in fact, did *not* receive the Agreement, nor has he offered any evidence that he received a *different* agreement than that which is attached to Sage's affidavit.

Importantly, Sage states that his affidavit is based on first hand knowledge and on review of business records maintained by PRA (Doc. 8). Sage further states that PRA requested from GE terms and conditions applicable to Plaintiff's account number, ending in "2164," and thereafter received from GE the terms and conditions that were in effect at the time PRA was allegedly assigned Plaintiff's account and the rights under the Agreement (Doc. 8). Other than general allegations of the affidavit's deficiency and blanket denials of the existence of any agreement between the parties, Plaintiff has offered no evidence to refute PRA's position. Accordingly, this Court finds no reason to believe that the terms and conditions attached to Sage's sworn affidavit are not the terms and conditions that Plaintiff bound himself to when he opened and used his Lowe's credit card account.

### B. PRA Has Not Established That It Received an Assignment of Plaintiff's Account and GE's Rights Under the Agreement.

Although this Court finds that an agreement to arbitrate disputes related to Plaintiff's account existed between Plaintiff and GE, PRA has not established that it has a valid assignment of Plaintiff's account or GE's rights under the Agreement.

A decision from our sister court is instructive. *Matute v. Main St. Acquisition Corp.*, WL 4513420 (S.D. Fla. Oct. 2, 2012). In *Matute*, the District Court for the Southern District of Florida denied an alleged assignee's motion to compel arbitration under nearly identical circumstances. Specifically, the defendant in that case attempted to force the plaintiff to arbitrate the dispute on grounds that it was the assignee of the original creditor's rights under the Cardmember Agreement, which contained a mandatory arbitration provision. *Id.* at *1-2. To support its position, the defendant relied solely on a declaration of its Vice President in an attempt to prove that it did, in fact, own the plaintiff's account, that it was an assignee of the original creditor, and that is was, therefore, entitled to enforce the arbitration provision contained in the Cardmember Agreement. *Id.* The court determined that the Vice President's declarations, standing alone, were insufficient to establish a valid assignment of the interests in the plaintiff's account and the rights under the Cardmember Agreement. *Id.* at *3. The court reasoned that because "[the defendant had] presented no sales documentation regarding the plaintiff's account . . . [t]here [was] no evidence . . . that [the defendant] rightfully [had] a claim to [the plaintiff's] account in any capacity." *Id.*

The same conclusion is mandated here. PRA has presented no documentation evidencing a sale or assignment of *any* GE/Synchrony accounts to PRA, let alone a sale or assignment of Plaintiff's account in particular. Other than a mere statement by Sage in his affidavit that Plaintiff's account was acquired by PRA in March of 2014 (Doc. 8), there is no evidence

7

whatsoever evidencing PRA's ownership over Plaintiff's account. "[T]he possibility of a debt collector attempting to collect a debt that it does not actually own, either through assignment or otherwise, is very real." *Henggeler v. Brumbaugh & Quandahl, P.C., LLO*, 894 F. Supp. 2d 1180, 1188 (D. Neb. 2012) (quoting *Webb v. Midland Credit Mgmt., Inc.*, WL 2022013, at *5 n. 8 (N.D. Ill. May 31, 2012)). And because of that reality, this Court is inclined to require more than bald assertions, even via sworn affidavit, as to the ownership over and assignment of Plaintiff's account. Thus, the Court finds that PRA has not presented sufficient evidence to demonstrate that it is entitled to enforce the arbitration provision contained in the Agreement by standing in GE's shoes. For that reason, PRA's Motion must be denied.[3] Accordingly, it is

**ORDERED** that Defendant's Motion to Compel Arbitration, Stay Proceedings, and Dismiss Class Action Claims (Doc. 8) is **DENIED** based on the record here. Defendant has ten days from this date to answer the Complaint.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, this ___ day of October, 2015.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT COURT JUDGE

Copies to: All parties and counsel of record.

---

[3] Because this Court finds that PRA has not established that it received an assignment of Plaintiff's account and GE's rights under the agreement, that portion of PRA's Motion requesting this Court to dismiss Plaintiff's class action claims need not be addressed. For the same reason, Plaintiff's argument that his claims are unrelated to the Agreement need not be addressed by the Court.